# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
                                          )
       v.                        )     ID No. 1210020570A
                                            )
REUEL RAY, )
                                          )
    Defendant.       )

Submitted: April 14, 2021
Decided: May 19, 2021

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

## MEMORANDUM OPINION

Benjamin S. Gifford IV, Esquire, The Law Office of Benjamin S. Gifford IV, Wilmington, Delaware, Attorney for Reuel Ray.

Matthew C. Bloom, Esquire, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

**Rocanelli, J.**

Reuel Ray ("Defendant") was convicted of Murder First Degree and related charges after an eight-day jury trial at which he was represented by two experienced criminal defense trial lawyers.[1] In a motion for postconviction relief, Defendant challenges the effectiveness of the legal representation he received. In addition, Defendant contends that his constitutional rights were violated because the State failed to disclose that criminal charges against a State witness had been dismissed; specifically, Defendant contends the State's failure to disclose this information to Defendant violates the constitutional tenets recognized in *Brady v. Maryland*.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2012, Craig Melancon was playing basketball with Defendant and Tyare Lee at an outdoor court in the Southbridge neighborhood of Wilmington, Delaware. Melancon's girlfriend's mother, Marla Johnson, and Johnson's grandson were among the spectators watching the game. When the men finished playing basketball, Lee asked to buy marijuana from Melancon who sold it for Anthony Coursey. Defendant, Lee, Melancon, Johnson and Johnson's young grandson left the basketball court at the same time and walked to the same neighborhood, also in the Southbridge neighborhood of Wilmington, Delaware. Johnson and her grandson went home for lunch. While Lee and Defendant waited outside, Melancon went to

---

[1] Eugene J. Maurer, Esquire, and Kevin P. Tray, Esquire, were appointed to represent Defendant for trial (collectively "Trial Counsel").
[2] 373 U.S. 83 (1963).

Coursey's house to get marijuana to sell to Lee. When Melancon rejoined Lee and Defendant outside, Melancon was shot and killed.

The State's theory was that Defendant's brother, Richard Ray, who was incarcerated in default of bail, asked Defendant to commit a robbery to obtain bail money so that Richard Ray would be released pending trial. According to the State's theory, Defendant conspired with Lee to rob Melancon. The State argued that Melancon was shot and killed by Defendant and Lee in the course of a botched armed robbery on May 21, 2012.

The Grand Jury returned an Indictment on November 5, 2012. Defendant and Lee were charged with Murder First Degree (for intentionally causing the death of Melancon by shooting him); Murder First Degree (for recklessly causing the death of Melancon by shooting him in the course of Attempted Robbery First Degree, "Felony Murder"); Attempted Robbery in the First Degree; and six counts of Possession of a Firearm During the Commission of a Felony (for each of the two handguns allegedly used in connection with the three lead felony offenses). Defendant and Lee were also each charged with Possession of a Firearm by a Person Prohibited and Conspiracy Second Degree. Richard Ray was charged with Conspiracy in the Second Degree as well as Criminal Solicitation in the Second Degree. Subsequently, on October 13, 2014, a Grand Jury issued a superseding Indictment against Defendant, adding two counts of Criminal Solicitation in the

Second Degree in connection with Defendant's efforts to recruit witnesses to testify falsely on Defendant's behalf at trial.

Regarding Defendant's motive, the State presented Richard Ray's recorded prison phone calls with Defendant before Melancon's murder. The State argued that these phone calls established that Richard Ray asked Defendant to rob someone to obtain money to bail out Richard Ray.[3] Regarding Defendant's means and opportunity, Lee testified for the State against Defendant after pleading guilty for Lee's own role in connection with Melancon's murder.[4] According to Lee, Defendant and Lee conspired to rob Melancon, and each were armed with a handgun. Lee testified that he and Defendant both fired their guns when it seemed that Melancon reached for something in his pocket. Melancon was struck by three bullets.

---

[3] Detective Michael Gifford of the Wilmington Police Department presented the prison phone calls. Detective Gifford testified that Defendant and Richard Ray referenced "doing a lick" which means committing a robbery and "looking for a lick" which means looking for someone to rob. *State v. Ray*, No. 1210020566, at 23 (Del. Super. Jan. 14, 2015) (TRANSCRIPT) [hereinafter "Ray Trial Tr. Jan. 14, 2015"].

[4] Lee pled Guilty on January 6, 2014 to Murder Second Degree, Attempted Robbery First Degree, two counts of Possession of a Firearm During the Commission of a Felony and Conspiracy Second Degree. Lee was sentenced by Order dated March 12, 2015—after Defendant's trial and conviction—effective October 31, 2012, as follows: for Murder Second Degree, 30 years at Level 5 suspended after minimum mandatory 15 years, for decreasing levels of supervision; for Attempted Robbery First Degree and two counts of Possession of a Firearm During the Commission of a Felony, 3 years at Level 5 for each of these three convictions; and a suspended 2-year sentence for Conspiracy Second Degree.

In addition to the recorded prison calls between Richard Ray and Defendant *before* Melancon was shot, the State also presented the recorded prison calls of Defendant with Richard Ray that took place *after* Melancon was killed but prior to Defendant's arrest. Defendant stated to Richard Ray that Defendant "tried" to commit a robbery "but the dude checked out."[5] The State argued this was an admission by Defendant that Defendant killed Melancon in a botched robbery attempt.

Regarding Melancon's murder by Defendant, the State also presented testimony by Coursey, Johnson, and Jonda Tann, among others. Coursey testified that he heard shots while getting pizza from a delivery driver. According to Coursey, when he ran out to investigate, Coursey saw Lee and Defendant running away. Coursey also testified that Defendant admitted to killing Melancon, but that Defendant claimed it was an accident.

Johnson testified that she heard four shots while she was inside her house making lunch for her grandson. Johnson said that she ran outside and found Melancon lying in the grass. Johnson further testified that she saw two men running

---

[5] Detective Gifford testified regarding these recorded prison calls between Defendant and Richard Ray on May 21, 2012 after Melancon was killed. According to Detective Gifford, when Defendant said "the dude checked out," it meant that someone had been killed. Ray Trial Tr. Jan. 14, 2015, No. 1210020566, at 23.

away. Johnson also testified that she recognized the two men from the basketball game but she was unable to identify them.

The State presented the testimony of Tann who testified that her son got a ride with Lee after the shooting. According to Tann, she spoke with Defendant to confirm that her own son had not been involved with Melancon's death. Tann testified on direct that Defendant admitted to her that Defendant and Lee shot Melancon when they tried to rob him. On cross-examination, Tann admitted that she had not told anyone, including the police, until two years after Melancon was shot that Defendant made this admission to her.[6] Detective Gifford testified that Tann told Gifford about Defendant's admission in September or October 2014 even though Tann spoke to police shortly after Melancon's 2012 murder.[7]

Regarding Defendant's efforts to recruit witnesses to testify falsely at trial, in addition to Defendant's recorded prison calls, the State presented the testimony of Defendant's girlfriend who testified that Defendant asked her to find two women who would testify falsely for Defendant to establish an alibi, as well as another girlfriend who testified that Defendant asked her to say that Defendant was with her when they both heard the gunshots which resulted in Melancon's death.

---

[6] *State v. Ray*, No. 1210020566, at 91–94 (Del. Super. Jan. 20, 2015) (TRANSCRIPT).

[7] *See State v. Ray*, No. 1210020566, at 61–62 (Del. Super. Jan. 22, 2015) (TRANSCRIPT) [hereinafter "Ray Trial Tr. Jan. 22, 2015"].

5

Following an eight-day trial in January 2015,[8] the jury found Defendant Guilty of Felony Murder; Attempted Robbery in the First Degree; four charges of Possession of a Firearm During the Commission of a Felony associated with murder and attempted robbery; Conspiracy in the Second Degree; and two counts of Criminal Solicitation in the Second Degree. The jury found Defendant Not Guilty of Murder First Degree (Intentional Murder) as well as the two associated charges of Possession of a Firearm During the Commission of a Felony.[9]

---

[8] Prior to the start of trial, the Court addressed with Defendant on several occasions whether he would consider a plea offer. However, Defendant was adamant that he would not plead guilty. *See State v. Ray*, No. 1210020570A, at 97–98 (Del. Super. Jan. 6, 2015) (TRANSCRIPT). Before trial, Defendant was asked again about a potential plea offer:

> The Court: . . . [W]hen I have asked about [a plea offer] in this case, I'm advised that no plea negotiations have been requested by the defense, i.e., you, so the State's not offered any plea. Only if you were to express an interest in plea negotiations would the State then, very potentially after conferring with senior staff, possibly offer a plea offer. Is it your desire not to request any plea offer from the State?
>
> [Defendant]: Yes, Your Honor.
>
> The Court: All right. You understand, then, that there will be no opportunity for you to accept any plea offer because you've not asked the State for any plea offer to occur.
>
> [Defendant]: Yes, Your Honor.

*Id.*

[9] The State entered a *nolle prosequi* on two counts of Possession of a Firearm During the Commission of a Felony. The State also dismissed the Possession of a Firearm by a Person Prohibited offense, which had previously been severed from the other charges to be presented separately at a subsequent trial.

Defendant was sentenced by Order dated July 8, 2016, effective November 1, 2012, to serve life in prison, as mandated by statute.[10]  In addition, Defendant was sentenced as follows: minimum mandatory of 3 years at Level 5 for each of the two counts of Possession of a Firearm During the Commission of a Felony; 3 years at Level 5 for each of the two counts of Criminal Solicitation in the Second Degree; 20 years at Level 5, suspended after 3 years at Level 5, followed by community-based supervision for Attempted Robbery in the First Degree; and 2 years at Level 5 for Conspiracy in the Second Degree.

Defendant appealed his conviction and sentencing to the Delaware Supreme Court.  By Order dated July 25, 2017, the Supreme Court affirmed Defendant's conviction and sentence.[11]  The Supreme Court addressed two issues.  The first issue was whether the Superior Court abused its discretion by failing to grant a mistrial after two jurors expressed concerns for their personal safety.  The second issue addressed the steps taken by the Superior Court after *voir dire* of the two jurors who had expressed personal safety concerns.  Defendant argued on appeal that the

---

[10] According to 11 *Del. C.* § 636(a)(2), Felony Murder is classified as Murder First Degree.  Murder in the first degree is a class A felony that is punished by serving life in prison. *See* 11 *Del. C.* § 4209 ("Any person who is convicted of first-degree murder for an offense that was committed after the person had reached the person's eighteenth birthday shall be punished . . . by imprisonment for the remainder of the person's natural life without benefit of probation or parole or any other reduction[.]").

[11] *Ray v. State*, 2017 WL 3166391, at *1 (Del. July 25, 2017) (TABLE).

7

Superior Court denied Defendant of his right to a fair trial after the Superior Court's *voir dire* of the two jurors when the Court gave cautionary instructions concerning sequestration of witnesses, court recesses, objections and court impartiality, but did not give a cautionary instruction on the presumption of innocence or admonish the jury not to discuss the case prior to deliberations.[12] The Delaware Supreme Court held that denial of the motion for a mistrial was not an abuse of discretion[13] and ruled that the trial court did not commit plain error when the court did not give a cautionary instruction on the presumption of innocence or admonish the jury not to discuss the case prior to deliberations.[14]

Defendant filed a motion for postconviction relief as a self-represented litigant asserting three grounds for relief.[15] Defendant also requested that counsel be appointed. This Court found that Defendant was entitled to appointment of counsel pursuant to Superior Court Criminal Rule 61(e) on the grounds that: (i) Defendant

---

[12] *Id.*

[13] *Id.* at *4–5.

[14] *Id.*

[15] Defendant raised the following three grounds for relief in the motion he filed as a self-represented litigant: (1) Trial Counsel were ineffective for failing to request a cautionary instruction reiterating that Defendant was presumed innocent and that the jury was not to discuss the case prior to deliberations after two jurors expressed safety concerns; (2) the Superior Court erred in failing to grant a mistrial after two jurors expressed safety concerns, one of whom stated she feared she would be shot in her car and compared herself to Demi Moore in the film *The Juror*; and (3) the Superior Court failed to thoroughly question the jury after discovering that the jurors had discussed their safety concerns amongst themselves and should have given a cautionary instruction about the presumption of innocence.

filed a timely motion for postconviction relief; (ii) it is Defendant's first motion for postconviction relief; (iii) it involves a conviction for Murder First Degree; and (iv) Defendant was sentenced to life imprisonment. Counsel was therefore appointed ("Rule 61 Counsel").

Upon review of the entire record, Rule 61 Counsel filed an Amended Motion for Postconviction Relief ("Rule 61 Motion") identifying three additional claims for postconviction relief. Trial Counsel filed affidavits addressing Defendant's claims of ineffective assistance of counsel. The State filed a response in opposition to Defendant's Rule 61 Motion. The Court heard oral argument on January 28, 2021 and requested supplemental briefing regarding the Court's use of an outdated jury instruction for Felony Murder ("Outdated Felony Murder Jury Instruction"). This is the Court's decision on Defendant's Rule 61 Motion.

## DEFENDANT'S CLAIMS FOR POSTCONVICTION RELIEF

Defendant asserts six grounds for relief, as follows: (1) the Superior Court denied Defendant his right to a fair trial by failing to grant a mistrial after two jurors expressed personal safety concerns; (2) the Superior Court committed plain error by failing to thoroughly investigate the jury panel after two jurors expressed concerns about their personal safety; (3) the State violated *Brady* by failing to disclose to Defendant that the State had dismissed assault charges against Tann, a witness for the State; (4) Trial Counsel were ineffective for failing to discover that charges

against Tann had been dismissed by the State; (5) Trial Counsel were ineffective and denied Defendant his right to a fair trial by failing to request a contemporaneous cautionary instruction on the presumption of innocence and to remind the jury not to discuss the case prior to deliberations after two jurors expressed safety concerns; and (6) Trial Counsel were ineffective for failing to object to the Outdated Felony Murder Jury Instruction.

## I. Threshold Procedural Bars to Postconviction Relief Do Not Apply: Defendant's Rule 61 Motion is His First and is Timely

To protect the finality of criminal convictions, the Court must consider the procedural requirements for relief set out under Rule 61(i) before addressing the merits of the motion.[16] Rule 61(i)(1) bars a motion for postconviction relief that is filed more than one year from a final judgment of conviction.[17] This bar is inapplicable as Defendant's motion is timely.[18] Rule 61(i)(2) bars successive motions for postconviction relief.[19] This bar is inapplicable as this is Defendant's first postconviction motion.

---

[16] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[17] Super. Ct. Crim. R. 61(i)(1).
[18] Defendant filed his initial Rule 61 Motion on August 11, 2017 within one year after the Delaware Supreme Court affirmed Defendant's conviction on August 10, 2017.
[19] Super. Ct. Crim. R. 61(i)(2).

## II. Claims Raised on Direct Appeal Are Procedurally Barred

The claims restated in Defendant's Rule 61 Motion that were already adjudicated by the Delaware Supreme Court on direct appeal are procedurally barred. Specifically, Rule 61(i)(4) bars relief if the postconviction motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[20] Defendant's claim that the Superior Court denied Defendant his Sixth Amendment right to a fair trial by failing to grant a mistrial and Defendant's claim that the Superior Court committed plain error by failing to thoroughly investigate the jury panel after two jurors expressed concerns about their personal safety were rejected by the Delaware Supreme Court in Defendant's direct appeal.[21] Accordingly, these two claims are procedurally barred and will not be addressed on the merits.

## III. Defendant's Claims Regarding Dismissal of Jonda Tann's Felony Assault Charge: Defendant Cannot Establish Prejudice

Tann testified on direct examination that Defendant admitted to her that Defendant and Lee shot Melancon. Before Tann testified, the State dismissed felony assault charges that had been pending against her.[22] Defendant contends that Tann

---

[20] Super. Ct. Crim. R. 61(i)(4).

[21] *See Ray*, 2017 WL 3166391, at *1–5.

[22] Specifically, the charges against Tann involved an alleged dispute between Tann and her son Anthony Tann over $30.00. The dispute resulted in an altercation. Tann claimed that she engaged in self-defense to protect herself from her son. Because Tann wielded a broken beer bottle, the charges were felony assault.

11

was motivated to testify against Defendant because the State had promised to dismiss her pending felony charges if she testified against Defendant at his murder trial. Trial Counsel cross-examined Tann regarding her failure to disclose to the police prior to September 2014 her claim that Defendant admitted to Tann that Defendant shot Melancon. On the other hand, Trial Counsel did not challenge Tann's incentive to change her story. In their affidavits, Trial Counsel confirm that the State had not disclosed to them that the State had dismissed a felony charge against Tann.[23]

Defendant contends that the State violated his constitutional rights[24] by failing to disclose that charges against Tann had been dismissed. Defendant also contends that Trial Counsel's failure to discover the dismissed charges in their trial preparation constitutes ineffective assistance of counsel because Trial Counsel failed to investigate Tann's criminal history. In order to prevail on these claims, Defendant must show that he suffered prejudice.

Defendant did not raise this *Brady* claim in his direct appeal. Rule 61(i)(3) bars relief if the postconviction motion includes claims that were not asserted in prior

---

[23] *See* Mauer Aff. ¶ 4 ("With respect to the witness Tan[n], [ ] it would have been helpful to have been provided with the information which has now been developed"); Tray Aff. 1 ("Counsel for Mr. Ray has reviewed his trial notes and witness preparation notes and does not see mention of Ms. Tann's felony assault matter, and the disposition thereof.").

[24] *See Brady*, 373 U.S. at 86–88 (explaining that a prosecutor's suppression of evidence favorable to a defendant would deprive that defendant of rights guaranteed by the Federal Constitution where the evidence is material either to guilt or to punishment).

proceedings leading to the final judgment *unless* the movant shows *both* cause for relief from the procedural default *and* prejudice from the alleged violation of Defendant's rights.[25]   Thus, Defendant's failure to include the claim of a *Brady* violation on direct appeal results in a procedural default unless Defendant demonstrates prejudice.

Notwithstanding the prerequisite of establishing prejudice to overcome Rule 61(i)(3)'s procedural bar, Defendant also must establish prejudice in order to demonstrate a *Brady* claim.  A *Brady* violation occurs when the State fails to disclose material evidence to the defense that is favorable because it is either exculpatory or impeaching, causing prejudice to the defendant.[26]   The Delaware Supreme Court described the three-component analysis for evaluating a *Brady* claim in a

---

[25] Super. Ct. Crim. R. 61(i)(3).
[26] *See Brady*, 373 U.S. at 87–88.

postconviction matter.[27]  Whether a *Brady* violation occurred often hinges on the last prong: whether there is prejudice.[28]

Defendant also claims ineffective assistance of counsel for Trial Counsel's failure to investigate Tann's criminal history.[29]  As a claim for ineffective assistance of counsel, this claim is not procedurally barred by Rule 61(i)(3) because ineffective assistance of counsel claims cannot be raised on direct appeal.[30]  Just as Defendant must establish prejudice to overcome the procedural bar set forth in Rule 61(i)(3) and to establish a *Brady* violation, Defendant must also demonstrate prejudice under

---

[27] The Delaware Supreme Court's *Brady* evaluation provides:
> There are three components of a *Brady* violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant.  In order for the State to discharge its responsibility under *Brady*, the prosecutor must disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense.  That entails a duty on the part of the individual prosecutor to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.

*Swan v. State*, 2021 WL 776744, at \*5 (Del. Mar. 1, 2021) (quoting *Starling v. State*, 130 A.3d 316, 332 (Del. 2015)).

[28] *Id.* at \*6 (citing *Atkinson v. State*, 778 A.2d 1058, 1063 (Del. 2001)).

[29] Specifically, Defendant claims that Trial Counsel should have searched the public resource known as "JIC" (the Judicial Information Center) which would have detailed Tann's criminal history, including the charges dismissed between her first interview with the police in 2012 regarding Melancon's death and her trial testimony in 2015.  Trial Counsel concede that JIC would have revealed that a felony assault charge against Tann had been dismissed during this interval.  Tray Aff. 1.

[30] *See Wright v. State*, 2019 WL 2417520, at \*3 (Del. June 6, 2019) (TABLE) ("In general, the Court does not consider on direct appeal claims of ineffective assistance of counsel.").

14

*Strickland v. Washington*[31] if he can first demonstrate that Trial Counsel's effort did

not meet the objective standard of reasonableness.[32]

"To succeed under the element of prejudice, [Defendant] must show that there

was a 'substantial likelihood' that if he had [presented the *Brady* material], the

outcome of his case would have been different."[33]  "In fulfilling that burden,

[Defendant] cannot merely show an error of constitutional dimension . . . he must

demonstrate that if he had asserted the challenge, 'he might not have been

---

[31] 466 U.S. 668, 687 (1984).  The *Strickland* standard is well-established in Delaware.  Under *Strickland* a defendant must satisfy a two-prong test.  *Id.*  The defendant must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 688.

[32] "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.  Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" such that the "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. State of La.*, 350 U.S. 81, 101 (1955)).

[33] *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990).

convicted.'"[34] Therefore, prejudice is established when the defendant can show that the suppressed evidence "undermines the confidence in the outcome of the trial."[35]

Although Tann's claim of Defendant's admission was significant evidence, the other evidence presented by the State was extensive and overwhelmingly established guilt beyond a reasonable doubt. Tann was the seventeenth witness who testified. Lee, the State's star witness, had already testified, implicating Defendant in Melancon's murder while admitting Lee's own role. Lee placed Defendant at the scene with a gun in his hand and testified that Lee and Defendant both shot Melancon. Other witnesses also placed Defendant at the scene. The State presented Defendant's own admission to his brother Richard Ray in a recorded prison phone call. Coursey testified that Defendant admitted that Defendant killed Melancon. The State also presented evidence of a motive for the armed robbery of Melancon. Finally, the State presented evidence of consciousness of guilt[36] through Defendant's efforts to solicit witnesses who would testify falsely on Defendant's behalf. Tann's

---

[34] *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 12 (1984)).

[35] *Norman v. State*, 968 A.2d 27, 30 (Del. 2009).

[36] *See Hawkins v. State*, 2002 WL 384436, at *1 (Del. Mar. 6, 2002) (TABLE) ("[A]ny conduct undertaken by a defendant after the commission of a crime that tends to show consciousness of guilt is relevant and admissible under D.R.E. 401"); *see also Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010) (TABLE) (quoting *State v. Durrant*, 188 A.2d 526, 528 (Del. 1963)) ("[S]ubject to well-defined rules of evidence, it is proper in a criminal case to show defendant's conduct, demeanor, and statements, whether oral or written, his attitude and relations toward the crime, if there was one. These are circumstances that may be shown. Their weight is for the jury to determine.").

16

testimony was followed by the two witnesses who testified that Defendant asked each of them to help Defendant to present false exculpatory evidence to support an alibi.[37]

---

[37] Allesha Taylor testified that Defendant wrote her a letter asking her to lie. *See* Ray Trial Tr. Jan. 22, 2015, No. 1210020566, at 26 ("Q: What was the story? [Ms. Taylor]: Me basically lying for [Defendant]."). Ms. Taylor testified she told Defendant it was a "dumb story." *See id.* at 25 ("Q: You don't remember telling him that the story was dumb? [Ms. Taylor]: Yea, I said that."). In addition to the testimony of the two witnesses, Detective Gifford presented the recorded prison calls, including a call with Darinequia Aikens, who testified just before Ms. Taylor. Ms. Aikens testified to the following:

> Q: Do you recall having a conversation with [Defendant] where he
>     asked [you to] do something for him?
> [Ms. Aikens]: Yes
> Q: What did he ask you to do?
> [Ms. Aikens]: He asked me to get two girls.
> Q: Two girls to do what?
> [Ms. Aikens]: Come to court for him.
> Q: What did he want those two girls to come to court for?
> [Ms. Aikens]: To testify.
> . . .
> Q: Did you understand the purpose of getting [two girls]
> [Ms. Aikens]: Yes.
> Q: What was the purpose?
> [Ms. Aikens]: He wanted two girls to come to trial for him
> . . .
> Q: Do you recall in your conversation with him when he asked you to
>     get two girls, whether you were okay with that or not?
> [Ms. Aikens]: Was I okay with it, no.
> Q: Why weren't you?
> [Ms. Aikens]: I don't want nothing [to] do with it.
> Q: Do you remember what you said to him?
> [Ms. Aikens]: I said no, no, I don't want no parts in that.

*Id.* at 10–12.

In addition, the veracity of Tann's claims was challenged on cross-examination by Trial Counsel of Tann herself as well as through the cross-examination of Detective Gifford. Detective Gifford admitted on cross-examination that he had spoken to Tann approximately one month after Melancon was murdered in 2012 but it was not until two years later, in September or October 2014, that Tann mentioned Defendant's admission that Defendant and Lee had shot Melancon.[38]

---

[38] *See id.* at 61–62.

> [Trial Counsel]: And when was the first time you spoke with [Tann]?
> [Detective Gifford]: Very first time?
> [Trial Counsel]: Yes.
> [Detective Gifford]: I think it was about a month into this investigation.
> [Trial Counsel]: Good, and assuming at that time she told you about this statement that [Defendant] supposedly made to her?
> [Detective Gifford]: No.
> [Trial Counsel]: Never mentioned that, did she?
> [Detective Gifford]: No.
> [Trial Counsel]: You spoke to her the first time were you talking about the case?
> [Detective Gifford]: Yes.
> [Trial Counsel]: Talked about the evidence in the case a little bit?
> [Detective Gifford]: Yes.
> [Trial Counsel]: . . . [W]hen is the first time she ever mentioned this statement that [Defendant] supposedly made to her that he had – don't worry about your son, I am the one that did it essentially?
> [Detective Gifford]: I think, like, September or October 2014.
> [Trial Counsel]: And in between the first time you spoke to her about a month after the incident, and September or October, October 2014 did you have occasion to speak with her at any other time?
> [Detective Gifford]: About this case?
> [Trial Counsel]: Yes.
> [Detective Gifford]: No, not really.

18

Thus, Tann's credibility was challenged by Trial Counsel, including by highlighting in closing argument that Tann's claim regarding Defendant's admission was recent and was a substantial change from the statement originally offered by her to the State.[39] Moreover, even if the jury had learned about the dismissal by the State of the charges against Tann, the charges were relatively insignificant and the State's reasoning for dismissing the charges was reasonable.[40]

Accordingly, despite the State's failure to disclose that charges against Tann had been dismissed by the State, and even if Trial Counsel's failure to investigate Tann's criminal history fell below the standard of reasonable performance, Defendant was not prejudiced. Although Tann's testimony was significant, Defendant cannot demonstrate that the evidence withheld by the State undermines confidence in the outcome of Defendant's trial in consideration of the overwhelming evidence of Defendant's guilt beyond a reasonable doubt.[41] Thus, Defendant cannot

---

[Trial Counsel]: Did she ever come into the police station before September, October and say I have some information relevant to this murder case that could be very important for your investigation?
[Detective Gifford]: No.

*Id.*

[39] *See* Mauer Aff. ¶ 4. Trial Counsel "thoroughly cross-examine[d] Ms. Tan[n] at trial as to the improbability of her version of events" and "the unbelievability of Ms. Tan[n]'s testimony was addressed during the Closing Argument." *Id.*

[40] The reason code noted on the docket for dismissal was "Attitude—victim or witness." *See State v. Tann*, No. 1408006768, Docket No. 2 (Dec. 4, 2014) ("*Nolle Prosequi* filed by Attorney General.").

[41] *See Starling v. State*, 882 A.2d 747, 756 (Del. 2005); *see also U.S. Bagley*, 473 U.S. 667, 678 (1985) ("[A] constitutional error occurs, and the conviction must be

overcome the procedural bar set forth in Rule 61(i)(3); demonstrate a *Brady* violation; or establish ineffective assistance of counsel.

## IV. Defendant's Other Claims of Ineffective Assistance of Counsel also Fail on the Merits

Defendant raises several additional claims of ineffective assistance of counsel. These claims are not procedurally barred by Rule 61(i)(3) because ineffective assistance of counsel claims cannot be raised on direct appeal.[42] Rule 61(i)(4) is inapplicable to Defendant's claims for ineffective assistance of counsel because these claims could not have been raised in the proceedings leading to the judgment of conviction or on direct appeal.[43] Therefore, the procedural requirements of Rule 61(i) are satisfied as to Defendant's remaining ineffective assistance of counsel claims which shall be addressed on their merits.

To establish a claim of ineffective assistance counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*.[44] The defendant must show

---

reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.").

[42] *See supra* note 30.

[43] Defendant argued in his direct appeal that the trial court committed plain error for failing to give a contemporaneous cautionary instruction. The Court reviewed that claim for plain error. A "[f]inding on direct appeal that the trial court did not commit plain error does not equate to a prior adjudication of [defendant's] ineffective assistance of counsel claim." *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014). Therefore, Defendant's ineffective assistance of counsel claim regarding the cautionary instruction is not procedurally barred by Rule 61(i)(4).

[44] 466 U.S. at 687; *see also supra* note 31 and accompanying text.

that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different.[45] The defendant must overcome the strong presumption that counsel's conduct was professionally reasonable.[46] Because the defendant must show that counsel made a professionally unreasonable error and that the error had an effect on the judgment, failure to prove either is sufficient to defeat a claim of ineffective assistance.[47] Proof of an ineffective assistance of counsel claim "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial," such that the result is unreliable.[48] In making this determination, this Court must eliminate the "distorting effects of hindsight"[49] and dismiss entirely conclusory allegations of ineffective assistance of counsel.[50] The defendant must provide concrete allegations of prejudice, including specifying the nature of the prejudice and the adverse effects actually suffered.[51]

---

[45] *Id.* at 688.
[46] *Id.* at 687–88.
[47] *Id.* at 697.
[48] *Id.*
[49] *Id.* at 689.
[50] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994) (TABLE).
[51] *Strickland*, 466 U.S. at 692; *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

**A.** **Trial Counsel's Failure to Request a Contemporaneous Instruction on the Presumption of Innocence Does Not Establish Ineffective Assistance of Counsel**

With respect to Defendant's first claim for relief, Defendant asserts that Trial Counsel was ineffective for failing to request a contemporaneous instruction on the presumption of innocence after the Court engaged in *voir dire* of two jurors regarding their personal safety concerns. Essentially, Defendant is reiterating a challenge Defendant made on direct appeal. However, instead of asserting that the Superior Court failed to provide a contemporaneous instruction on the presumption of innocence as argued on appeal, Defendant now uses the same argument but changes the responsible party from the Court to Trial Counsel. This Court finds Defendant's *new* argument unpersuasive.

In Delaware, "[a] defendant has no right to have the jury instructed in a particular form. However, a defendant is entitled to have the jury instructed with a correct statement of the substantive law."[52] Even if Defendant was able to show Trial Counsel's failure to request a contemporaneous instruction was deficient, Defendant has not shown prejudice under the second prong of *Strickland* as explained above. There was not a reasonable likelihood that the result at trial would

---

[52] *Hoskins*, 102 A.3d at 730–31 (alteration in original) (quoting *Claudio v. State*, 585 A.2d 1278, 1282 (Del. 1991)).

have been different even if Trial Counsel had requested a presumption of innocence instruction and the trial judge had given one.

**B.      Trial Counsel's Failure to Object to the Outdated Felony Murder Jury Instruction Does Not Constitute Ineffective Assistance of Counsel Because Defendant Did Not Suffer Prejudice**

The Outdated Felony Murder Jury Instruction did not correctly track the language of the indictment[53] or the correct version of the applicable statute.[54] Melancon was murdered on May 21, 2012.  The trial took place in January 2015. The Felony Murder statute was revised as of May 19, 2004.[55]  The jury instruction given by the Court to the jury[56] mistakenly tracked the pre-2004 version of the Felony Murder statute rather than the applicable revised statute.

---

[53] *See* Indictment by the Grand Jury at 2, *State v. Ray*, No. 1210020570 (Del. Super. Nov. 5, 2012).  Count IV of the indictment tracks the language of the applicable statute: "on or about the 21st day of May 2012, in the County of New Castle, State of Delaware, while engaged in the commission of, or attempt to commit Robbery First Degree, did recklessly cause the death of Craig Melancon by shooting him." *Id.*

[54] The applicable statute reads:
>    (a) A person is guilty of murder in the first degree when:
>    . . .
>    (2) While engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person.

11 *Del. C.*  § 636(a)(2).

[55] *See* 74 Del. Laws ch. 246, §§ 2, 3, eff. May 19, 2004.

[56] The Court charged the jury with the Outdated Felony Murder Jury Instruction as follows:
>    As to Count IV, under Delaware law, a person is guilty of murder in the
>    first  degree,  when  in  the  course  of  [  ]  and  in  furtherance  of  the

Defendant argues that Trial Counsel were ineffective and that he was prejudiced because Trial Counsel did not object at trial or on direct appeal to the Outdated Felony Murder Jury Instruction delivered by the Court. Specifically, Defendant argues that Trial Counsel should have objected to the use of a Felony Murder jury instruction that did not recite the current version of the Felony Murder statute. In addition, Defendant argues that the outdated definition of "accomplice" in the jury instructions was unfairly prejudicial.

---

commission or attempted commission of any felony, or in the immediate flight therefrom, that person recklessly causes the death of another person. In other words, in order to find the defendant guilty of murder i[n] the first degree, as to Count IV, you must find that each of [the] following elements has been established beyond a reasonable doubt.

First, the defendant caused the death of Craig Melancon; and second, the defendant acted recklessly; and third, Craig Melancon's death occurred in the course of and in furtherance of the defendant's commission of a felony.

In order to prove that the defendant caused Craig Melancon's death, the State must establish that Craig Melancon would not have died but for the defendant's conduct. Recklessly means that the defendant was aware of and consciously disregarded substantial and unjustifiable risk that Craig Melancon's death would result from his conduct. The State must demonstrate the risk was of such nature and degree that the defendant's disregard of it was a gross deviation from the standard of conduct that a reasonable person would observe under the same circumstances. "In the course of" means Craig Melancon's death occurred during the defendant's commission of a felony. "In furtherance of" means that Craig Melancon's death was caused by the defendant, or his accomplice who committed a felony. The State does not have to prove that the defendant or his accomplice caused Craig Melancon's death for the purpose of committing a felony.

*See* Ray Trial Tr. Jan. 22, 2015, No. 1210020566, at 167–68.

24

Prior to the 2004 amendment, the Felony Murder statute contained the following language: "(a) A person is guilty of murder in the first degree when: . . . (2) *[i]n the course of and in furtherance of* the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person."[57]  In response to Delaware Supreme Court decisional law interpreting the Felony Murder statute,[58] including expressed confusion regarding the "in furtherance of" language,[59] the General Assembly amended the Felony Murder statute in 2004 and removed the "in the course of and in furtherance of" language.[60]  The new statutory language requires the State to show "'only that the

---

[57] 11 *Del. C.* § 636(a)(2) (1987) (emphasis added).  Section 636(a)(2) was subsequently amended in May of 2004, July of 2009 and June of 2013.  The most recent amendment was effective on June 4, 2013.  The Court should have instructed the jury by tracking the language of the statute in effect at the time of Melancon's murder.

[58] *See Weick v. State*, 420 A.2d 159, 162 (Del. 1980) (citing *Jenkins v. State*, 230 A.2d 262, 268 (Del. 1967)) (explaining that there would need to be limitations placed on the rule, such as the requirement of a causal connection between the felony and the murder); *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992) ("[F]or felony murder liability to attach, a killing need only accompany the commission of an underlying felony.  Thus, if the 'in furtherance of' language has any limiting effect, it is solely to require that the killing be done by the felon, him or herself."), *overruled by Williams v. State*, 818 A.2d 906 (Del. 2002).

[59] *See Williams*, 818 A.2d at 911–13 (noting the "confusion regarding the state of the law" and explaining that "the Delaware felony murder statute not only requires that the murder occur during the course of the felony but also that the murder occur to facilitate commission of the felony").

[60] The synopsis to the bill amending the statute cited the "*Williams* decision with disapproval."  *Comer v. State*, 977 A.2d 334, 340 (Del. 2009); *see* 74 Del. Laws ch. 246, §§ 1, 2 (2004).

25

killing must be directly associated with the predicate felony as one continuous occurrence'; rather than requiring that the killing affirmatively help facilitate the predicate felony."[61]

Rather than charge the jury with the correct version of the Felony Murder statute, the Court used an instruction that tracked the pre-2004 amendment language, and not the Indictment or the revised statute. Specifically, the Outdated Felony Jury Instruction contained "when in the course of and in furtherance of the commission of" language.[62] Also, the Court's instruction did not define the language contained in Section 636(a)(2) or the indictment consisting of "while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony."[63] Moreover, while defining "in furtherance of" for the jury, the instruction stated that "'in furtherance of' means that Craig Melancon's death was caused by the defendant, or his *accomplice* who committed a felony."[64]

The failure of Trial Counsel to object to the jury instructions either during trial or on direct appeal is reviewed under the *Strickland* standard.[65] Regarding Defendant's challenge to Trial Counsel's effectiveness on direct appeal, "a

---

[61] *Comer*, 977 A.2d at 340 (citing 74 Del. Laws ch. 246 syn. (2004)).
[62] *See* Ray Trial Tr. Jan. 22, 2015, No. 1210020566, at 167.
[63] 11 *Del. C.* § 636(a)(2); Indictment by the Grand Jury at 2, *State v. Ray*, No. 1210020570 (Del. Super. Nov. 5, 2012).
[64] *See* Ray Trial Tr. Jan. 22, 2015, No. 1210020566, at 168 (emphasis added).
[65] *Ryle v. State*, 2020 WL 2188923, at *2 (Del. May 5, 2020) (TABLE).

defendant must show that counsel failed to find arguable, nonfrivolous issues to appeal and to file a brief raising them."[66]   The Outdated Felony Murder Jury Instruction was incorrect.  Trial Counsel neither objected at trial nor presented this issue in the direct appeal.  Nevertheless, Defendant's claim of ineffective assistance of counsel fails because he was not prejudiced.

"The primary purpose of jury instructions is to define with substantial particularity the factual issues, and clearly to instruct the jury as to the principles of law which they are to apply in deciding the factual issues involved in the case before them."[67]  "A trial court must give instructions to a jury as required by evidence and law whether the parties request the instruction or not."[68]   "As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[69]  The question is whether "the jury instructions, considered as a whole, were a correct statement of the present substantive law."[70]

---

[66] "Appellate counsel need not raise every nonfrivolous claim, but rather may select the arguments that maximize the likelihood of success on appeal." *Id.*   "Therefore, when appellate counsel files a merits brief raising issues for consideration on appeal, a defendant who argues that counsel was ineffective for failing to raise an argument on appeal must show that the argument that was not presented was 'clearly stronger' than the arguments that were presented." *Id.*

[67] *Zimmerman v. State*, 565 A.2d 887, 890 (Del. 1989).

[68] *Id.* at 891.

[69] *Benson v. State*, 105 A.3d 979, 986 (Del. 2014) (quoting *Smith v. State*, 913 A.2d 1197, 1241 (Del. 2006)).

[70] *Evans v. State*, 1992 WL 404282, at *2 (Del. Dec. 21, 1992) (TABLE).

After a prayer conference addressing jury instructions,[71] the State and Trial Counsel agreed on the instructions to be delivered by the Court to the jury at the conclusion of trial.[72]  Although the Outdated Felony Murder Jury Instruction was included in the Delaware Pattern Jury Instructions[73] it did not accurately reflect the most recent statutory language for Felony Murder.  Neither the Court nor the State nor Trial Counsel noticed that the instruction was outdated and should have been updated to reflect the changes to the statute.  Nevertheless, the pre-amendment version of the statute with which the jury was actually charged placed a higher burden on the State to establish Defendant's guilt beyond a reasonable doubt for Felony Murder than was required by the post-amendment, applicable version of the statute.  Accordingly, although the Outdated Felony Murder Jury Instruction was incorrect, Defendant cannot establish prejudice because the jury was instructed that the State had an even higher burden of proof than the revised statute required.

Moreover, the reference to an accomplice in the jury instructions also does not justify postconviction relief.  While there was a brief reference to an "accomplice" in the instructions, Defendant failed to prove that there is a reasonable probability that the outcome of his trial would have been different but for Trial

---

[71] *See generally State v. Ray*, No. 1210020507A (Del. Super. Jan. 21, 2015) (TRANSCRIPT).

[72] *Id.* at 34.

[73] Del. Super. P.J.I. Crim. § 11.636(a)(2) (2010).

Counsel's failure to object to the instruction. "The decision to give a particular jury instruction lies within the sound discretion of the trial court."[74] Although the Trial Court's instruction did not use the post-amendment language, it did state the critical elements of felony-murder. Moreover, the Outdated Felony Murder Jury Instruction imposed a higher burden on the State to prove Felony Murder. Because the jury instructions required the jury to convict the Defendant based on a higher standard, Defendant did not suffer any prejudice.

Even if Trial Counsel had raised the objection on appeal, the Supreme Court would have reviewed the claim for plain error.[75] "Under the plain error standard of review, the error must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[76] Defendant was not prejudiced because the State's burden was higher than it would have been under the post-amendment version of the statute. Because Defendant cannot establish prejudice, his claims of ineffective assistance of counsel at trial and on appeal fail.

---

[74] *Carter v. State*, 873 A.2d 1086, 1088 (Del. 2005) (citing *Sheeran v. State*, 526 A.2d 886, 893 (Del. 1987)).
[75] *See* Supr. Ct. R. 8; *Hoskins*, 102 A.3d at 728.
[76] *Hoskins*, 102 A.3d at 735 (quoting *Turner v. State*, 5 A.3d 612, 615 (Del. 2010)).

## CONCLUSION

Defendant is not entitled to postconviction relief. Defendant's claims raised on direct appeal are procedurally barred under Rule 61(i)(4). Further, Defendant's *Brady* claim is procedurally barred under Rule 61(i)(3) because Defendant cannot establish prejudice. Notwithstanding the procedural bar, Defendant cannot establish prejudice as required for his *Brady* claim or to establish ineffective assistance of counsel for Trial Counsel's failure to investigate the criminal history of a witness for the State. Finally, Defendant's remaining claims of ineffective assistance of counsel claims fail on the merits because Defendant cannot establish prejudice under the second prong of *Strickland*.

**NOW, THEREFORE, this 19th day of May 2021, Defendant Reuel Ray's Motion for Postconviction Relief is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**